## BROWN v. MURPHY et al.
### No. 2935.

Circuit Court of Appeals, First Circuit.
Dec. 1, 1934.

Myer Z. Kolodny, of Boston, Mass. (Avery, Dooley, Post & Carroll, of Boston, Mass., on the brief), for appellant.

Albert Hurwitz, of Boston, Mass., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from the refusal of the District Court of Massachusetts to grant a motion to recommit the report of a referee in bankruptcy and an order adjudicating the alleged debtor a bankrupt.

The petitioning creditors operated motor vehicles or taxicabs in the state of Massachusetts, and were required by its laws to take out insurance policies covering accidents.

They obtained insurance policies in the Lloyds Insurance Company of America, through its agent, the Motor Vehicle Underwriters of Massachusetts, Inc., a Massachusetts corporation organized for the purpose of acting as an insurance agent and broker, and having an office in Boston and hereinafter referred to as the broker. The alleged bankrupt, the Underwriters' Finance Corpo-

ration, occupied the·same office, and was organized for the purpose of financing motor vehicle insurance premiums when the motor vehicle owner was unable to pay the full premiums in advance, it being necessary in Massachusetts to have a policy of insurance before a license to operate and registration plates can be obtained.

The practice was for the insurance broker to solicit insurance from motor vehicle owners, and, when they needed financial aid in order to pay the premiums in advance, they would be referred to the representative of the Underwriters' Finance Corporation, hereinafter referred to as the finance corporation, or the debtor, or the bankrupt, which would undertake to finance the payment of the premium.

Under its plan the insured would pay in advance at least one-sixth of the premium in cash and give a note for the balance of the premium, payable in ten monthly installments. The policy, when issued, was finally deposited with the finance corporation as security for the note of the insured, and the finance corporation was authorized under the terms of the note to collect on the policy, or received returned premiums in case of cancellation, and apply the sum on the insured's note, if not fully paid.

One of these petitioners paid to the finance corporation in advance the entire amount of the premium on his policies, though why in such case he was required to pay his premiums through the finance corporation is not apparent, unless in order that the finance corporation could collect certain charges. The other two petitioners paid to the finance corporation the cash payment required and gave their notes, and paid the monthly installments to the debtor in advance up to September 1, 1933. The insurance company received no payments from either its broker or the finance corporation after May, 1933, and canceled the policies of each of these petitioners the last week in July, 1933.

On August 30, 1933, a receiver was appointed in the Massachusetts state courts for the finance corporation, and on September 8, 1933, an involuntary petition in bankruptcy was filed by the three petitioners, alleging as an act of bankruptcy the appointment of a receiver, and that they held claims amounting to over $500.

The receiver was authorized by the state court to appear in the bankruptcy court and filed an answer denying that the petitioners were creditors, or that the debtor was insol-

vent. The matter was referred to a referee in bankruptcy, who found that by the appointment of a receiver an act of bankruptcy had been committed, that the debtor was insolvent, and that the petitioners were creditors having claims amounting to more than $500. Whereupon the District Court adjudicated the debtor a bankrupt.

The receiver filed a motion to recommit the matter to the referee to report the evidence submitted to him, which was denied and this appeal was taken.

The errors assigned by the refusal to recommit are: (1) that the findings of the referee were based on answers to interrogations and cross-interrogations propounded to the assistant deputy insurance commissioner of New York in charge of the liquidation of the Lloyds Insurance Company of America, and his findings were contrary to the evidence adduced by the answers; (2) that the referee failed to report the terms of the policies with respect to the rights of the petitioners to the unearned premiums; (3) that the referee failed to include the form of receipt given to the petitioners by the finance corporation at the time of making the monthly payments.

With respect to the alleged rulings of the District Court, the receiver also assigned as errors that the court erred in adjudicating the finance corporation a bankrupt; in finding that the petitioners were creditors of the bankrupt; that they had provable claims to the amount of $500; that the finance corporation received the monthly payments on account of insurance premiums; that it paid any premiums to the insurance company; that the petitioners paid any premiums to the debtor in advance for the month of August without receiving any benefit therefrom; such payments resulted in a debt upon a contract, express or implied.

While there were fourteen assignments of error, they are encompassed in the above. The District Court, however, made no rulings except as were necessarily included in adjudicating that the debtor was a bankrupt.

██ We think there was no reversible error in denying the motion to recommit. The granting of such motion is within the discretion of the court. The motion did not set forth sufficient grounds for recommital. In the main, it was based on an alleged inconsistency in setting forth payments of the monthly installments by the debtor to the insurance company, instead of to its agent, a distinction without a difference, if such were the facts; and that the payments to the debt-

or were on account of insurance premiums instead of on the sums due on the notes, a distinction likewise without a difference, inasmuch as the notes were given in consideration of the payment of the premiums by the bankrupt. There was no clear abuse of discretion in the refusal to recommit.

We are, therefore, confined, in considering the other assignments of error, to the facts reported by the referee.

It is contended that the District Court erred in finding that the debtor was insolvent, or that the petitioners were creditors, as the court must necessarily have found, in order to adjudicate the debtor a bankrupt.

The referee reported that he found that the debtor was insolvent, and, on the facts reported by the referee, we think there was no error of law in the District Court accepting his report as to this essential fact.

Upon the referee's report, the District Court was warranted in finding that the petitioners, if they were creditors, had provable claims in excess of $500. From the facts stated in his report, the referee was warranted in finding that, by some arrangement with the insurance company, its broker in Massachusetts, and the alleged bankrupt, the premiums on these policies were not paid to the insurance company in advance before the policies were issued, but monthly. Whether he found that the monthly payments on the notes were paid on account of insurance premiums or on the notes is immaterial. It was perfectly obvious that the notes were a part of a plan by which the insurance premiums were to be financed; and whether the finance corporation, prior to the cancellation of the policies, paid the monthly payments to the insurance company or to its agent is also immaterial. In any event, if they had been paid to the broker, the insurance company could not legally have canceled the policies; hence the referee was warranted in finding that none of the payments to the finance corporation after May 1, 1933, including those paid in advance on August 1, were ever paid, either to the insurance company or its broker.

The referee evidently held that, since the petitioners paid to the finance corporation the monthly payments due for the month of August, and one of the petitioners for the following five months, and the finance corporation, after the policies had all been canceled, had accepted the payments for the purpose of applying them on the monthly payments of the premiums on the petitioners' insurance policies, it was bound to hold these payments for the benefit of the insured, or to show that it had paid the money, either to the insurance company or its broker, as it was bound to do under the arrangement that evidently existed between it and the insurance company and its broker. If the finance corporation had paid the entire premiums in advance, as the insured undoubtedly had a right to assume it would do, it might retain the sums paid to it and collect its notes in full, but it never did pay the premiums in full. By its arrangement with the insurance company and its broker, it evidently arranged to pay only as it received the payments from the insured, but it did not do even that, and, as a result of its failure to do so, the insured's policies were canceled. It is in no position now, in a court applying equitable principles, to claim that, because the insured obtained their policies in advance of full payment and could, therefore, comply with the law as to registration, it can keep all sums paid on its notes, when through its own default the policies of insurance were no longer of benefit to the insured.

The finance corporation does not claim to be an insurance broker or agent for the Massachusetts broker; therefore moneys paid to it are not held in trust for either the insurance company or its broker. It held itself out to be a finance corporation solely. If it was the agent of any one, it was the agent of the insured; but it is not necessary to determine that.

It is in a position of a party accepting funds to be devoted to a specific purpose, which it never applied to that purpose, but kept the funds. The principle laid down in the following cases applies: Strong v. Bliss, 6 Metc. 393; Flye v. Hall, 224 Mass. 528, 113 N. E. 366; Cohen v. Wintman, 236 Mass. 471, 128 N. E. 778.

We think the District Court did not err in finding that the petitioners were creditors and in adjudicating the debtor a bankrupt.

The order and decree of the District Court are affirmed, with costs.